UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CYNTHIA BROUGHTON,                          Case No. 1:20-cv-261
      Plaintiff,                          Litkovitz, M.J.

      vs.

SHOE SHOW, INC.,                            **ORDER**
      Defendant.

Plaintiff Cynthia Broughton originated this action in the Court of Common Pleas for

Clermont County, Ohio (Doc. 2), and defendant removed it to this Court on April 3, 2020. (Doc.

1). Plaintiff asserts a single count of statutory product liability under Ohio law based on

allegations that a defective shoe supplied by defendant Shoe Show, Inc. caused her to fall and

sustain injuries. (*See generally,* Doc. 2). This matter is before the Court on defendant's motion

for summary judgment (Doc. 31), plaintiff's response (Doc. 47), and defendant's reply (Doc.

54).

**I. Background**

Plaintiff alleges that she purchased a pair of "Jessica Cline Dreamer" shoes (Dreamer

shoes) on February 22, 2018 from defendant (d/b/a Show Department, Encore) in Clermont

County, Ohio. (Doc. 2 at PAGEID 28-29). Plaintiff alleges that on March 26, 2018, the top

strap on one of the Dreamer shoes "malfunctioned, by among other things, coming

undone/separated from its intended position, causing plaintiff . . . injury, including . . . a

fractured ankle." (*Id.* at PAGEID 30). Plaintiff alleges that she "was acting with ordinary care

and prudence for her safety[,]" she was using the Dreamer shoes "as intended and in a manner

reasonably foreseeable to defendant," and the Dreamer shoe "was in substantially the same

condition" when she wore it as it was when defendant "placed it into the stream of commerce."

(*Id.*). Plaintiff alleges that the Dreamer shoe's defect was the proximate cause of her injuries. (*Id.* at PAGEID 33).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

### III. Ohio Product Liability Act (OPLA), Ohio Rev. Code § 2307.71 et seq.[1]

To succeed on an OPLA claim, a claimant must demonstrate by a preponderance of the evidence that:

> (1) a defect existed in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the hands of the defendant; and (3) the defect was the proximate cause of the plaintiff's injuries or loss.

*McGrath v. Gen. Motors Corp.*, 26 F. App'x 506, 511 (6th Cir. 2002) (citing *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 523 N.E.2d 489 (Ohio 1988)); *see also Jones v. Staubli Motor Sports Div. of Staubli Am. Corp.*, 897 F. Supp. 2d 599, 607 (S.D. Ohio 2012) (same). Plaintiff asserts a single count of statutory product liability under the OPLA. (*See* Doc. 2). Within that count, plaintiff references each type of defect contemplated by the OPLA: manufacture or construction (§ 2307.74); design or formulation (§ 2307.75); inadequate warning or instruction (§ 2307.76);

---

[1] All references to "§" herein refer to sections of the Ohio Revised Code.

and failure to conform to manufacturer's representation (§ 2307.77). (*See* Doc. 2 at PAGEID 31-32).

Plaintiff does not dispute that defendant is the Dreamer shoes' supplier as opposed to their manufacturer. Under the OPLA, liability attaches to a supplier in only three instances:

> First, under § 2307.78(A)(1), a supplier may be liable if it was independently negligent, and that negligence proximately caused injury to the plaintiff. Second, under § 2307.78(A)(2), a supplier may be strictly liable if it made an express representation to the plaintiff, to which the product failed to conform when it left the supplier's hands. Liability under these first two theories requires active conduct by the supplier that causes or contributes to the plaintiff's injury. *Id.* And third, under § 2307.78(B), a plaintiff may hold the supplier liable as if it were the manufacturer, if the manufacturer is potentially culpable but absent from the proceedings.

*King v. Centerpulse Orthopedics, Inc.*, No. 1:05-cv-1318, 2006 WL 456478, at *3 (N.D. Ohio Feb. 24, 2006).

Defendant argues that plaintiff failed to produce any evidence demonstrating that it should be held liable under either of the first two categories of supplier liability. (*See* Doc. 31 at PAGEID 182-83). Plaintiff does not rebut this argument, and the Court considers it conceded. This Order therefore considers only the third category: whether plaintiff has raised a genuine issue of material fact as to defendant's derivative liability as a supplier. *See* § 2307.78(B).

## IV. Analysis

Broadly, defendant's position is two-fold. First, defendant argues that the report from plaintiff's expert Bonnie Smith does not comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.[2] Accordingly, defendant argues that Ms. Smith's report should be disregarded, and plaintiff should not be permitted an opportunity to remedy the report's deficiencies because plaintiff has not shown that they were substantially justified or harmless. Without the testimony

---

[2] All references to "Rule" herein refer to the Federal Rules of Civil Procedure unless otherwise noted.

of an expert, defendant argues that plaintiff cannot establish a defect under the OPLA, and her claims must be dismissed. Second, defendant argues that even if plaintiff has raised a genuine issue of material fact as to whether the Dreamer shoe is defective under the OPLA, plaintiff has not raised a genuine issue of material fact as to the applicability any one of the eight conditions necessary for derivative supplier liability to attach under the OPLA. *See* § 2307.78(B).

The Court begins its analysis with Rule 26(a)(2)(B). Next, the Court considers whether expert testimony is necessary under Ohio law to establish a defect under the OPLA. Finally, the Court considers whether plaintiff has established a genuine issue of material fact as to any of the eight conditions necessary for derivative supplier liability to attach under the OPLA.[3]

A. Rule 26(a)(2)(B)

Defendant first argues that Ms. Smith's report does not comply with Rule 26(a)(2)(B), which governs the disclosure of expert testimony from witnesses "retained or specially employed to provide expert testimony. . . ." *Id.* Defendant argues, in particular, that Ms. Smith's report does not list her publications, other cases in which she has testified, the compensation she was paid, or, most importantly, the basis and reasons for her opinions. Defendant argues that the deficiencies in Ms. Smith's report are not substantially justified, as plaintiff has not updated or supplemented it since it was first drafted in October of 2020. Defendant argues that the deficiencies in the report are not harmless, because a vague opinion is inherently prejudicial. Finally, defendant argues that supplementation is not appropriate because the deficiencies here were not inadvertent errors or omissions but rather "inadequate or incomplete preparation." (Doc. 31 at PAGEID 179).

---

[3] Plaintiff also argues that defendant's motion does not adhere to District Judge Dlott's Standing Order on Civil Procedures I(E)(2)(a). Because the parties consented to this Court's jurisdiction prior to the filing of the pending motion (*see* Doc. 10), this argument is moot.

In her response, plaintiff argues that Ms. Smith's report "adequately sets forth her opinions" and that defendant's expert's detailed rebuttal belies any suggestion that Ms. Smith's report is deficient under Rule 26(a)(2)(B).  (Doc. 47 at PAGEID 387).  Plaintiff argues that defendant has engaged in gamesmanship by electing not to depose Ms. Smith and, instead, seeking to exclude her report.  Plaintiff also explains that Ms. Smith simply did not have information relative to certain of the Rule 26(a)(2)(B) requirements (subsections iv and v), and defendant knew the amount of Ms. Smith's compensation because a statement thereof was attached to its motion for summary judgment (*see* Doc. 31-2 at PAGEID 207).  Finally, plaintiff points to case law interpreting the Federal Rules of Evidence to suggest that courts are to err on the side of admitting expert testimony.

In reply, defendant argues that plaintiff did not rebut its substantive critiques of Ms. Smith's report—in particular, that the report does not adequately set forth the bases for her conclusions.  Defendant argues that plaintiff carries the burden to put forth evidence creating a genuine issue of material fact regardless of the defendant's response to such evidence (e.g., Doc. 47-2 (defendant's expert's report) or its failure to depose Ms. Smith).  Defendant also argues that Rules 26 and 37 present a threshold question, and plaintiff's citation to law regarding the admissibility of expert testimony under Rule 704 of the Federal Rules of Evidence is not germane.

Rule 26(a)(2)(B) provides that Ms. Smith's report,

must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*  These requirements were added to Rule 26 because "[t]he information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes to 1993 amendment.  Put differently by the Sixth Circuit:

Under Rule 26(a), a "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998) (citing *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)).  "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.*

*R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010).  Ms. Smith's report is an October 9, 2020 email.  (Doc. 31-2 at PAGEID 208-09).  Plaintiff also attached Ms. Smith's May 24, 2022 affidavit to her response, which includes additional information about Ms. Smith's background.  (Doc. 45).  The Court is satisfied that, although Ms. Smith's report was not responsive to Rule 26(a)(2)(B)(iv)-(vi), this information is either not applicable or has been otherwise disclosed to defendant as explained in plaintiff's response.  (*See* Doc. 47 at PAGEID 387).  As such, any associated error is harmless.  *See Porter v. Hamilton Beach/Proctor-Silex, Inc.*, No. 01-2970, 2002 WL 34439818, at *2 (W.D. Tenn. Aug. 6, 2002) (finding that the plaintiffs had "substantively complied with Rule 26 expert testimony disclosure requirements"

7

even though their expert's report did not cite specific instances of prior expert testimony or the exhibits that the expert would rely on and that any deficiencies were harmless because the plaintiffs could easily provide the missing information).[4]

The balance of defendant's arguments concern Rule 26(a)(2)(B)(i). This subsection ensures that an expert report includes the "'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc.*, 606 F.3d at 271 (quoting *Salgado*, 150 F.3d at 742 n.6). Defendant cites three cases discussing this component of Rule 26(a)(2)(B). In *EQT Prod. Co. v. Phillips*, the district court concluded that the expert report at issue was overly subjective and failed to offer even a conclusory opinion regarding the issue in the case (legal malpractice). 767 F. App'x 626, 634 (6th Cir. 2019). The Sixth Circuit affirmed the district court's finding that the report did not comply with Rule 26(a)(2)(B) applying the abuse-of-discretion standard. *Id.* at 630, 633-34. In *Baker v. Chevron USA, Inc.*, a toxic tort case, the Court applied Rule 26(a)(2)(B) and declined to consider the plaintiffs' causation expert's reports, which did little more than refer generally to the plaintiffs' and their families' medical histories and medical literature relevant to the alleged toxin without any connection between the two. 680 F. Supp. 2d 865, 877-78 (S.D. Ohio 2010), *aff'd*, 533 F. App'x 509 (6th Cir. 2013). Finally, in *Balimunkwe v. Bank of Am.*, the undersigned found that the plaintiff's handwriting expert's report satisfied Rule 26(a)(2)(B), notwithstanding the defendants' characterization of the report as being "scant one page" and offering only a "bottom line." No. 1:14-cv-327, 2015 WL 5167632, at *6 (S.D. Ohio Sept. 3, 2015), *report and recommendation adopted*, 2015 WL 5836975 (S.D. Ohio Oct. 2, 2015). The undersigned found that the

---

[4] Plaintiff's response states that Ms. Smith did not have any publications within the last four years (Doc. 47 at PAGEID 387), though Rule 26(a)(2)(B)(iv) refers to the "previous 10 years[.]" Defendant does not raise this discrepancy in its reply, and the Court finds that to the extent plaintiff intended to refer to a 10-year period, plaintiff could easily provide this clarification.

handwriting expert explained his conclusions based on comparisons to forgeries and authentic signatures. *Id.*

The Court finds that Ms. Smith's report satisfies Rule 26(a)(2)(B)(i). The Court acknowledges that Ms. Smith's report is subject to obvious critiques. For example, Ms. Smith admits that she did not perform tests that could have confirmed certain of her opinions and professes that the interaction between synthetics and adhesives is "not her area of expertise. . . ." (*Id.*). Nevertheless, Ms. Smith's report offers three primary opinions: (1) the lasting allowance[5] on the Dreamer shoe's strap was too short; (2) the Dreamer shoe's upper strap material lost tensile strength due to the way in which it was scivved[6]; and (3) the Dreamer shoe's material, likely synthetic, did not interact well with the adhesive used to scive it to the insole board. (*See* Doc. 31-2 at PAGEID 208-09). Ms. Smith also gives some explanation for her conclusions. Ms. Smith refers to the length of the Dreamer shoe's strap versus the length she would expect given this type of shoe construction, she observes that the Dreamer shoe's strap broke at the lasting allowance, and she offers her belief that synthetic materials do not always interact well with fibers and adhesives. (*See id.*). The Court concludes that *Phillips* and *Baker* are distinguishable, as the reports therein did not offer *any* reasons for the opinions reached (leaving aside such reasons' persuasiveness) or did not offer opinions at all. Like in *Balimunkwe*, the Court finds Ms. Smith's report offers more than a bottom line.

Even if Ms. Smith's report did not comply with Rule 26(a)(2)(B), the Court finds that the failure would be harmless. "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply

---

[5] Ms. Smith defines "lasting allowance" as "the area of the strap to pass under the insole board" that mounts to the outsole board "with the straps between the two." (Doc. 31-2 at PAGEID 208).
[6] Ms. Smith defined "scivved" as the process by which the edges of the upper straps "wrap under the insole board. . . ." (*Id.*).

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The Sixth Circuit has held that Rule 37(c)(1) "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999) (footnote omitted)).  Nevertheless, the advisory committee notes to Rule 37(c)(1) caution:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.

Fed. R. Civ. P. 37 advisory committee's note to subdivision (c).

"A noncompliant party may avoid sanction if 'there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'" *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.,* 596 F.3d 357, 370 (6th Cir. 2010)).  The Sixth Circuit has generally understood "harmless" in this context to involve an honest mistake by one party accompanied by sufficient knowledge on the part of the other party. *Id.*  It is plaintiff's burden to demonstrate that her rule violation was substantially justified or harmless. *R.C. Olmstead, Inc.*, 606 F.3d at 272 (citing *Roberts*, 325 F.3d at 782).  Even since Rule 37's amendment to include mandatory punishment for discovery violations, the Sixth Circuit has found that failures to disclose are "relatively harmless" when opposing counsel "kn[ows] *who* [i]s going to testify and to *what* they [are] going to testify." *Roberts*, 325 F.3d at 783 (emphasis added).  In *Roberts*, the Sixth Circuit noted that in the typical case where exclusion is justified under Rule 37(c)(1), opposing counsel either had

no advance knowledge that the expert witness would testify or no knowledge of the substance of the expert's reports. *Id.*

The Court concludes that error relevant to Rule 26(a)(2)(B), if any, would be harmless. Defendant was aware of Ms. Smith and the contents of her report and—in fact—engaged an expert that rebutted her opinions. (*See* Doc. 47-2). Because defendant "kn[ows] who [i]s going to testify and to what [she is] going to testify[,]" the Court finds that any error here would be harmless. *Roberts*, 325 F.3d at 783.

B. Evidence of defect

Assuming, *arguendo*, that Ms. Smith's report were excluded, the Court next considers defendant's argument that expert testimony is necessary to sustain plaintiff's OPLA claims. On this issue, the parties appear to focus only on the types of defect contemplated by § 2307.74 (manufacture or construction) and § 2307.75 (design or formulation). (*See* Doc. 31 at PAGEID 180 ("Absent a proper expert report addressing the design and manufacture of the [Dreamer shoe], Plaintiff's claim fails, and summary judgment in Shoe Show's favor is appropriate."); Doc. 47 at PAGEID 384 ("At the time [the Dreamer shoe was] placed in the market, [it] was in a defective condition, to wit: the top straps were not properly secured to the shoe, and the shoes were unreasonably dangerous to users. . . .")). As such, the Court considers whether expert testimony is necessary to establish a defect under either of these two theories.

As it relates to a manufacturing defect:

A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

11

§ 2307.74.

A plaintiff may rely on circumstantial evidence to prove the existence of a manufacturing defect if the plaintiff has introduced "other evidence that either (1) eliminates some of the other possible causes of the injury or (2) establishes that a defect-free product would not have performed the way the product at issue performed." *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 966 (6th Cir. 2007) (emphasis deleted). As it relates to the second prong, plaintiff points to the testimony of Jay Manning, defendant's 30(b)(6) witness, that the Dreamer shoe should not have broken on the first use. (*See* Doc. 47-1 at PAGEID 437). This, coupled with plaintiff's statements in her affidavit that she was "acting with ordinary care, and in a proper manner[,]" "the shoe was being utilized in an intended and foreseeable manner[,]" and that she "did not alter the shoe in any manner prior to its malfunction[,]" constitutes sufficient circumstantial evidence to raise a genuine issue of material fact on the question of whether the Dreamer shoe had a manufacturing defect. (Doc. 44 at PAGEID 361).

As it relates to a design defect,

(A) . . . [A] product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section.

(B) The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;

(5) *The extent to which that design or formulation is more dangerous than a re[a]sonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.*

(C) The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

(3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation.

§ 2703.75 (emphasis added).

As with a manufacturing defect, expert testimony is not necessary to demonstrate the existence of a design defect:

Although it is often necessary for a plaintiff asserting a design defect claim to present expert testimony in support of that claim, expert testimony is not always required to prove the material elements of a design defect claim.  [*See Atkins v. Gen. Motors Corp.*, 725 N.E.2d 727, 733 (Ohio Ct. App. 1999)].  Where the claim involves a simple device without any complex features or designs, circumstantial evidence may be sufficient to establish that a defect existed.  *Id.*

*Jones*, 897 F. Supp. 2d at 612.  *See also Rees v. W.M. Barr & Co., Inc.*, 736 F. App'x 119, 128 (6th Cir. 2018) ("It may well be that . . . the simplicity of the design of the [product] makes expert testimony unnecessary."); *Najib v. Meridian Med. Techs., Inc.*, 179 F. App'x 257, 260-61 (6th Cir. 2006) (holding that expert testimony was not necessary to withstand summary judgment on whether an EpiPen had a design defect where the product had a simple design, and there was

13

testimony that the EpiPen at issue was new, had not been previously removed from the box, and the plaintiff and his wife knew how to use it); *Hisrich v. Volvo Cars of N. Am.*, Inc., 226 F.3d 445, 456-57 (6th Cir. 2000) (when considering the "consumer-expectation test" under a prior version of § 2307.75,[7] the court held that "evidence of unexpected performance is sufficient to infer product defect."); *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 793 (6th Cir. 1984) (holding that the "[p]roduction of expert testimony is not necessary to prove the existence of a design defect" in the context of a metal grain bin); *Ruff v. Wal-Mart Stores E., LP*, No. 2:07-cv-292, 2009 WL 3150319, at *6-7 (S.D. Ohio Sept. 30, 2009) (In an OPLA case concerning a television-VCR unit, the Court noted that "[c]ases applying [the OPLA] do not suggest that proof of [a design-defect] claim necessarily requires either direct or expert evidence."); and *Fisher v. Ford Motor Co.*, 13 F. Supp. 2d 631, 638 n.10 (N.D. Ohio 1998), *aff'd*, 224 F.3d 570 (6th Cir. 2000) ("[T]he determination of whether a product is more dangerous than an ordinary person would expect is generally a question of fact which does not require expert testimony.") (citation omitted). Once a plaintiff raises a genuine issue of material fact with respect to a consumer's expectation, even though this is only one of the five considerations under amended § 2307.75(B)'s foreseeable-risk inquiry, a plaintiff's case should be presented to the jury. *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 653 (S.D. Ohio 2015) ("[A] genuine issue of material fact concerning the consumer expectation test is enough for the determination of foreseeable risk to go to the jury.").

Considering plaintiff's affidavit, Mr. Manning's testimony, and making all inferences in plaintiff's favor, the Court finds that plaintiff has marshalled sufficient evidence to create a

---

[7] The OPLA has since been "amended to remove the consumer expectation test as a separate test and to include the consumer's expectation as one factor in deciding whether the foreseeable risks of the design exceed the benefits." *Becton v. Starbucks Corp.*, 491 F. Supp. 2d 737, 750 (S.D. Ohio 2007).

genuine issue of material fact as to whether the Dreamer shoe's "design or formulation is more dangerous than a re[a]sonably prudent consumer would expect when used in an intended or reasonably foreseeable manner."  § 2307.75(B)(5).  As such, plaintiff's design-defect claim does not necessarily turn on Ms. Smith's report—particularly given the relatively simple product (a shoe) at issue.[8]

Defendant cites *Newell Rubbermaid, Inc. v. Raymond Corp.* for the proposition that Ohio law requires expert testimony where the design-defect theory of liability would involve technically complex questions beyond the understanding of a lay juror.  676 F.3d 521 (6th Cir. 2012).  The *Newell* court made this observation, however, in the context of its discussion of a risk-benefit theory of design-defect liability as opposed to the consumer-expectation theory.  *Id.* at 529.  These are no longer distinct theories of design-defect liability; the latter is now a part of the former.  (*See supra* n.7).  When the *Newell* court applied the consumer-expectation test (now encompassed in the foreseeable risk test in § 2307.75(B)), it held that "[t]he determination of whether a product is more dangerous than an ordinary person would expect is generally a question of fact which does not require expert testimony."  *Id.* at 530 (quoting *Hisrich*, 226 F.3d at 455).  The *Newell* court observed that "[t]he issue" when evaluating consumers' expectations "is not whether the consumer can determine the reasonable expectations for the technical operation of the product, but the consumer's reasonable ability to expect the performance of the product."  *Id.* (quoting *Hisrich*, 226 F.3d at 456).  The *Newell* court gave an example of a case involving a van's side door—seemingly more complicated than a shoe—as one in which expert

---

[8] Defendant argues that plaintiff's theory that defendant's Rule 30(b)(6) witness admitted a defect amounts to *res ipsa loquitur*—a doctrine inapplicable to the statutory liability asserted in this case.  "Res ipsa loquitor is 'a rule of evidence which permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding injury to the plaintiff.'"  *Heier v. Crossroads Cmty. Church, Inc.*, Nos. C-200244, C-200391, 2021 WL 1905041, *9 (Ohio Ct. App. May 12, 2021) (quoting *Hake v. George Wiedemann Brewing Co.*, 262 N.E.2d 703, 705 (Ohio 1970)).  Given the authority discussed above, the Court does not agree with defendant.

testimony was *not* required to establish a defect. *Newell*, 676 F.3d at 529-30 (referring to *Atkins*, 725 N.E.2d 727). For all of these reasons, the Court remains convinced that plaintiff's ability to establish a defect under either the manufacture- or design-defect theories of liability does not depend on expert testimony.

 C.  <u>Ohio Rev. Code §§ 2307.78(B)(1)-(8)</u>

 Defendant argues that plaintiff's OPLA claim must fail—regardless of expert testimony or the defect theory pursued—because she has not raised a genuine issue of material fact as to any of the eight necessary conditions in § 2307.78(B) for supplier liability to attach. As noted above, the Court finds that plaintiff has conceded that defendant may be liable under the OPLA as a supplier only pursuant to § 2307.78(B). Under that subsection:

> A supplier of a product is subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code, as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code and any of the following applies:
>
> (1) The manufacturer of that product is not subject to judicial process in this state;
>
> (2) The claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer;
>
> (3) The supplier in question owns or, when it supplied that product, owned, in whole or in part, the manufacturer of that product;
>
> (4) The supplier in question is owned or, when it supplied that product, was owned, in whole or in part, by the manufacturer of that product;
>
> (5) The supplier in question created or furnished a manufacturer with the design or formulation that was used to produce, create, make, construct, assemble, or rebuild that product or a component of that product;
>
> (6) The supplier in question altered, modified, or failed to maintain that product after it came into the possession of, and before it left the possession of, the supplier in question, and the alteration, modification, or failure to maintain that product rendered it defective;

(7) The supplier in question marketed that product under its own label or trade name;

(8) The supplier in question failed to respond timely and reasonably to a written request by or on behalf of the claimant to disclose to the claimant the name and address of the manufacturer of that product.

*Id.*

Thus, for derivative supplier liability to attach, plaintiff must demonstrate both that the Dreamer shoe's manufacturer would be liable under the OPLA based on one of the four theories of defect contemplated by the statute (*see* § 2307.73) *and* that one of the eight listed conditions applies. *Becton*, 491 F. Supp. 2d at 747. Plaintiff carries the burden to establish both elements of § 2307.78(B). *Everhart v. TM Claims Serv., Inc.*, No. 2:09-cv-267, 2009 WL 10679479, at *9 (S.D. Ohio Oct. 8, 2009) ("The burden of establishing substitute supplier liability is on the claimant to prove by a preponderance of the evidence.") (citing *Dobbelaere v. Cosco, Inc.*, 697 N.E.2d 1016, 1024 (Ohio Ct. App. 1997)); *Crego v. Baldwin-Lima-Hamilton Corp.*, No. 16515, 1998 WL 80240, at *5 (Ohio Ct. App. Feb. 27, 1998) ("In order to sustain a strict product liability cause of action against [the defendant], the [plaintiffs] were required, pursuant to R.C. 2307.78(B), to show that one of the enumerated circumstances set forth in the provision was present.").

In response, plaintiff states that "[q]uestions abound as to the applicability of R.C. § 2307.78(B)(1), (3), (4), (6), (7), and/or (8)." (Doc. 47 at PAGEID 389). Plaintiff, however, has failed to present any evidence showing how defendant may be held liable as a supplier under §§ 2307.78(B)(3), (4), (6), or (7). Therefore, she has failed to raise a genuine issue of fact on these conditions such that resolution by jury trial is warranted. Instead, plaintiff presents evidence and substantive arguments related to only two conditions: §§ 2307.78(B)(1) ("The manufacturer of

th[e] product is not subject to judicial process in this state[.]") and (8) ("The supplier in question failed to respond timely and reasonably to a written request by or on behalf of the claimant to disclose to the claimant the name and address of the manufacturer of that product."). Thus, the Court will only address the conditions in §§ 2307.78(B)(1) and (8). *Cf. Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

Plaintiffs' arguments related to subsections (B)(1) and (B)(8) overlap. Plaintiff argues that defendant "*unreasonably* failed to disclose any useful information as to the proper name and/or address of the alleged manufacturer[,]" such as a telephone number, email address, or contact person. (Doc. 47 at PAGEID 388-90) (emphasis added). Plaintiff also argues that defendant's response was unreasonable because internet research based on the name and address provided by defendant yielded neither the given manufacturer located at the given address nor secretary-of-state registration by the given manufacturer in any State. (*See* Bristol Aff., Doc. 46). Plaintiff argues that this investigatory impasse, coupled with the fact that defendant did not seek to bring the manufacturer into this litigation to "deflect or share liability[,]" demonstrates that the manufacturer is not subject to judicial process in Ohio. (Doc. 47 at PAGEID 389). Plaintiff also argues that defendant failed to initially disclose its buyer, Mike Floyd, who plaintiff assumes would have information about the Dreamer shoe's manufacturer.

In reply, defendant emphasizes that its disclosure of the Dreamer shoe's manufacturer under § 2307.78(B)(8) complied with the letter of the statute. Defendant provided the manufacturer's name and address in writing in both its initial disclosures (Doc. 26-1 at PAGEID

136)[9] and in a June 22, 2021 email from defendant's counsel (Doc. 25-5 at PAGEID 110)[10].

Defendant also argues that plaintiff has made no evidentiary showing at all on whether the

manufacturer is subject to judicial process in Ohio.

Section 2307.78(B)(1) provides for supplier liability where "[t]he manufacturer of th[e]

product is not subject to judicial process in this state[.]"  The term "judicial process" refers to

"personal jurisdiction."  *Potts v. 3M Co.*, No. 87977, 2007 WL 764528, at *3 (Ohio Ct. App.

Mar. 15, 2007).  Under Ohio law, personal jurisdiction requires a dual showing that (1) a non-

resident defendant is subject to Ohio's long-arm jurisdiction under § 2307.382, and (2) the

exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment.

*Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012).

Plaintiff's counsel's affidavit, attesting to cursory internet research into the Dreamer

shoe's manufacturer, does not raise a genuine issue of material fact that the Dreamer shoe's

manufacturer is not subject to personal jurisdiction in Ohio.  In *Hawkins v. World Factory, Inc.*,

No. CT2012-0007, 2012 WL 4713924, at *1, 3 (Ohio Ct. App. Sept. 27, 2012), the plaintiff-

appellants challenged the trial court's grant of summary judgment based, in part, on §

2307.78(B)(1).  The plaintiff-appellants argued that the *supplier* "failed to produce any evidence

to establish any of the requirements of Ohio's Long Arm Statute apply to the manufacturer."  *Id.*

at *3.  Affirming the decision below, the court held that the "[plaintiff-a]ppellants had the burden

of establishing the manufacturer was not subject to judicial process" and a conclusory allegation

---

[9] Identifying individuals likely to have discoverable information to include "Unknown employee(s) at Huidong County de Gao Shoes Factory, No.123 Shoes City Road, Ji Long, Huidong, GuangDong, China" who "may possess information regarding the design and manufacture of the shoe Plaintiff alleges is defective."

[10] Identifying the name and address of the manufacturer of the shoe as Huidong County De Goa Shoes Factory, No.123 Shoes City Road, JiLong Town Huidong County, GuangDong Province China.

that "the manufacture [wa]s not subject to judicial process" was "insufficient to withstand a motion for summary judgment." *Id.*

Ohio courts may assert personal jurisdiction over a person that directly or through an agent, inter alia, transacts business in Ohio or causes tortious injury by act or omission in Ohio. §§ 2307.382(A)(1), (3). In addition, it is not unprecedented for this Court to conclude that exercise of its jurisdiction over a Chinese company comports with due process under the Fourteenth Amendment. *See AtriCure, Inc. v. Jian Meng*, No. 1:19-cv-54, 2019 WL 4957915, at *4-6 (S.D. Ohio Oct. 8, 2019); *Stolle Mach. Co., LLC v. RAM Precision Indus.*, No. 3:10-cv-155, 2011 WL 6293323, at *4-6 (S.D. Ohio Dec. 15, 2011). Plaintiff's counsel's affidavit, if anything, raises factual issues about whether defendant identified the correct name and address for the manufacturer; it does *not* raise a factual issue about whether the Court has personal jurisdiction over the Dreamer shoe's manufacturer. Plaintiff produces no evidence that it otherwise investigated the Dreamer shoe's manufacturer or that manufacturer's contacts with Ohio. Moreover, plaintiff cites no authority for her suggestion that the Court should, in effect, asses a negative inference against defendant for defendant's failure bring the Dreamer shoe's manufacturer into the litigation. To the contrary, "[p]laintiffs, as proponents of the lawsuit, have the burden of proving their claims, and, as a consequence, have the corollary duty of diligently investigating the facts necessary to prove their claims during the discovery phase of their lawsuit." *Crego*, 1998 WL 80240, at *4. *Cf. Hervey v. Normandy Dev. Co.*, 585 N.E.2d 570, 573 (Ohio Ct. App. 1990) (court declined to toll the statute of limitations, even though other defendants knew the identity of a potential defendant component part manufacturer and plaintiff argued that those defendants obstructed discovery, because the plaintiff "knew or should have known that there was a manufacturer of component parts but simply did not exercise the

20

requisite investigation" to identify that manufacturer within the two-year statute of limitations).[11] For these reasons, the Court finds that plaintiff has not raised a genuine issue of material fact as to the applicability of § 2307.78(B)(1).

As to § 2307.78(B)(8), this section requires that plaintiff show by a preponderance of the evidence that defendant "failed to respond timely and reasonably to a *written* request by or on behalf of [plaintiff] to disclose to [plaintiff] the *name and address* of the manufacturer of that product." *Id.* (emphasis added). The plain language of the statute undercuts plaintiff's arguments that defendant was obligated to produce a telephone number, email address, or contact person. In addition, in reply, defendant points to hundreds of documents it produced in discovery that were either exchanged with or received from Huidong County Da Goa Shoes Factory. (*See* Doc. 54 at PAGEID 642, referring to Doc. 54-1 at PAGEID 648-69 (defendant's responses to plaintiff's requests for production numbers 1 and 3)). Plaintiff has also failed to rebut defendant's argument that she never made a *written* request for the name of the manufacturer. (*See* Doc. 31 at PAGEID 188). In any event, it is undisputed that defendant disclosed the name of the manufacturer to plaintiff in writing in its July 17, 2020 initial disclosures (Doc. 26-1 at PAGEID 136) and in a June 22, 2021 email to counsel (Doc. 25-5 at PAGEID 110).

The limited case law discussing § 2307.78(B)(8) supports the conclusion that plaintiff has not raised a genuine issue of material fact regarding the condition. In *Dobbelaere*, the plaintiff appealed a grant of summary judgment on an OPLA derivative liability claim against a supplier. 697 N.E.2d 1016. The plaintiff argued that the supplier's response to a discovery request

---

[11] Although considering the application of the "discovery rule" in a statute of limitations dispute as opposed to the precise issue here, the *Hervey* court distinguished a situation in which a plaintiff has no knowledge of another defendant from a situation in which a plaintiff knows or should know of the existence of another defendant. *Id.* at 573. In the latter situation, the statute of limitations would not be tolled. *Id.*

seeking the identity of the product's manufacturer was unreasonable because later evidence revealed that a different entity from whom the supplier identified had actually manufactured the product. *Id.* at 1025. The court held, however, that at the time the supplier responded to the plaintiff's written discovery request, "it was reasonable for the supplier . . . to believe that the manufacturer . . . was the same entity whose name appeared on the . . . product." *Id.* The court accordingly concluded that no genuine issue of material fact existed to demonstrate that the supplier was liable under § 2307.78(B)(8). *Id. Cf. State Farm Fire & Cas. Co. v. Env't Indus. Int'l*, No. CI0201106494, 2013 Ohio Misc. LEXIS 209 (Lucas Cnty. Ct. C.P. July 17, 2013) (summary judgment granted as to § 2307.78(B)(8) where the plaintiffs' interrogatories had "not ask[ed] in a simple and plain manner for the defendants to disclose the manufacturer." Instead, the plaintiffs had "presented compound questions . . . that permitted the defendants -- in very lawyerly fashion -- to avoid answering the intended but unasked question. . . ."). Here, as indicated above, defendant identified the manufacturer of the Dreamer shoe as part of its initial disclosures on July 17, 2020 (Doc. 26-1 at PAGEID 136) and again in a June 22, 2021 email to counsel (Doc. 25-5 at PAGEID 110), and plaintiff has not identified a subsequent written request with which defendant did not comply. The Court finds that plaintiff has failed to raise a genuine issue of material fact as to the applicability of § 2307.78(B)(8).

Plaintiff makes other arguments focused on what she characterizes as defendant's intentionally "misle[ading]" conduct in discovery and court filings. (Doc. 47 at PAGEID 391). First, plaintiff argues that she did not learn of Mr. Floyd, defendant's buyer, until he was disclosed during the Rule 30(b)(6) witness's deposition. Plaintiff argues that, as a buyer, Mr. Floyd knew about the Dreamer shoe's design or manufacture and should have been (but was not) identified in defendant's initial disclosures or otherwise. Plaintiff points to Mr. Manning's

deposition testimony that Mr. Floyd would "have some knowledge and input [as to the materials used in the manufacture of the Dreamer shoe]" and would have had a file on the Dreamer shoe. (Doc. 47-1 at PAGEID 430, 441).  Second, plaintiff identifies a statement in Mr. Manning's declaration in support of summary judgment ("[t]he lawsuit filed by [plaintiff] was the first time [defendant] had notice that a Jessica Cline Dreamer Shoe may have caused a wearer significant harm" (Doc. 31-3 at PAGEID 216[12]) as being inconsistent with other evidence that Mr. Floyd was aware of plaintiff's potential personal injury claim as early as mid-2018 (*see* Doc. 47-4 at PAGEID 461).

In its reply, defendant argues that it did not identify Mr. Floyd in its initial disclosures because it did not believe that he had information on the design or manufacture of the Dreamer shoe or discoverable information that defendant would "use to support *[the disclosing party's] claims or defenses*."  Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).  As for Mr. Manning's declaration, defendant argues, in effect, that Mr. Manning's use of the phrase "the lawsuit filed by [plaintiff]" was meant to encompass defendant's first notice of plaintiff's personal injury claim given by her prior counsel in June 2018 (*see* Doc. 47-3 at PAGEID 458) and the ensuing internal investigation—not merely plaintiff's formal 2020 court filing.

Plaintiff seeks sanctions in connection with these latter arguments—relying on district courts' "inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[,]" which includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).  "A district court has the

---

[12] (*See also* Doc. 31 at PAGEID 183 ("Plaintiff's lawsuit was the first time Shoe Show had notice that a Jessica Cline Dreamer shoe may have caused a wearer significant harm.")).

23

inherent power to sanction a party when that party exhibits bad faith. . . ." *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2015 WL 4742686, at *6 (S.D. Ohio Aug. 11, 2015) (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003) (collecting cases)). Courts may exercise their inherent power to impose sanctions when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when the party's conduct was "tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Chambers*, 501 U.S. at 45-46, and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

The Court is not convinced that defendant's statements regarding the timing of its knowledge of plaintiff's claims were "tantamount to bad faith" or "abuse[d] . . . the judicial process." *Haeger*, 137 S. Ct. at 1186; *Brown*, 2015 WL 4742686, at *6. The Court acknowledges the inconsistency that plaintiff raises between Mr. Manning's statement in his declaration and the June 2018 letter notifying defendant of plaintiff's injury claim. And the Court is not entirely persuaded by defendant's explanation. (*See* Doc. 25-4 at PAGEID 103 ("Shoe Show was not notified of Plaintiff's injuries until it was served with this lawsuit *in March . . . 2020*.") (emphasis added)). Nevertheless, plaintiff does not offer the Court any evidence from which to conclude that this discrepancy was intentional and the result of bad faith. *Cf. Coleman v. Shoney's, Inc.*, No. 99-3134, 2002 WL 1784289, at *3 (W.D. Tenn. July 9, 2002) ("Although there are certainly some inconsistencies in the deposition testimony . . . , [it] is uncertain whether plaintiffs actually, in bad faith, gave false testimony. . . ."). Plaintiff offers no particular prejudice suffered or advantage gained by defendant through the potential misstatement that would allow the Court to fashion an appropriate remedy. *See Haeger*, 137 S. Ct. at 1186.

With respect to defendant's buyer, Mr. Floyd, plaintiff argues that defendant was obligated to disclose him in either its initial disclosures or as an individual "with information about the manufacture, design or purchase of [the Dreamer shoe]." (Doc. 47 at PAGEID 391). Defendant, however, indicates that Mr. Floyd did not have discoverable information that it would use to support its *defenses*, and plaintiff does not identify specific discovery requests that she believes defendant evaded by not mentioning Mr. Floyd.[13] In Mr. Manning's deposition, he testified as follows with respect to Mr. Floyd's role and the role of a buyer:

> A. So the way the [Dreamer shoe] would have been brought into the United States is that first it would have been some sort of sample. It's not a production sample, by the way. . . . The buyer would have really ambiguous term, but like the shoe. . . . [The buyer] wrote a purchase order. . . .
> . . . .
>
> Q. . . . Do you know who the buyer for the [Dreamer shoe] was?
>
> A. . . . I believe it's Mike Floyd.
>
> Q. . . . Who determines what materials are used in the manufacture of [the Dreamer shoe]?
>
> A. So certainly the buyer has some knowledge and input there, but ultimately that would be the designers and the manufacturers of the product.
>
> Q. What input did [Mr. Floyd] have relative to the [Dreamer shoe]?
>
> A. . . . I can comfortably say [Mr. Floyd] would have known, for example, whether the upper was leather or not leather. [Mr. Floyd] would have certainly known not only that the shoe came in one or more colors, [Mr. Floyd] would have known specifically which colors.
> . . . .
>
> Q. . . . When you say [Mr. Floyd] knew that it was leather, [Mr. Floyd] can say I want leather or I don't want leather, right?
>
> A. Generally, yes. But now in shoe manufacturing, you look at a shoe and the factory -- the agent has brought you a shoe. I've got some factory -- typically, we don't even know where the factory is -- but I've got some factory that can make this shoe. It's not uncommon for a back and forth between a buyer and an agent

---

[13] Defendant produced the file that Mr. Floyd had on the Dreamer shoe. (*See* Doc. 47-1 at PAGEID 441-42).

to be I love the shoe, but I want it to be -- fill in the blank. Whether it's leather or not leather, I want it to be the other one. And the answer is they can't do that. Or it could be, the -- the answer could be, they can't do that.

Q. Okay.

A. And so there are limitations as to what can be done when buying a shoe.

Q. Okay. And so was [Mr. Floyd] the one responsible for purchasing the [Dreamer shoe] all the way back to 2017?

A. Yes.

Q. And information relative to what [Mr. Floyd] wanted, what [Mr. Floyd] didn't want, where would that be kept?

A. On the purchase order.

Q. Okay. So there's no communication between [Mr. Floyd] and the agent other than the purchase order?

A. There certainly could be oral conversation. . . .
. . . .

Q. Would [Mr. Floyd] have a [Dreamer shoe] file?

A. He would.

Q. Okay. What would be in it?

A. It's the purchase orders that we -- that we have produced. That -- that would be it.

(Doc. 47-1 at PAGEID 425-26, 430-32, 441-42). As the Court understands Mr. Manning's testimony, Mr. Floyd had no role in actually manufacturing or designing any particular shoe but rather picked from or expressed opinions relative to purchase options available from a given manufacturer through an agent.[14]

---

[14] The Court also notes that plaintiff filed defendant's responses to plaintiff's first request for production of documents, which include the following requests:

In sum, the Court is unconvinced that defendant's conduct highlighted by plaintiff was "tantamount to bad faith" or "abuse[d] . . . the judicial process." *Haeger*, 137 S. Ct. at 1186; *Brown*, 2015 WL 4742686, at *6. As such, sanctions are not warranted.

## V. Conclusion

Ms. Smith's report meets the threshold requirements of Rule 26(a)(2)(B), and the alleged errors—if any—would be harmless. Even if Ms. Smith's report were excluded under Rule 37(c)(1), the Court does not find that expert testimony is necessary to sustain plaintiff's burden to establish either a manufacture or design defect—the theories invoked by the parties in their memoranda. Nevertheless, because the Court finds that plaintiff has not raised a genuine issue of material fact as to any of the eight conditions listed in § 2307.78(B), summary judgment in favor of defendant is appropriate.

### IT IS THEREFORE ORDERED THAT:

Defendant's motion for summary judgment (Doc. 31) is **GRANTED**.

Date: 9/26/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

---

3. Produce true, correct and complete copies of the history, design and development of the model [Dreamer shoe] including the design and development of the heel assembly installed in the subject shoe and other similar shoes.
. . . .

4. Produce all design documents, specifications and other documentation concerning all major component parts and features of the model [Dreamer shoe.]

(Doc. 25-4 at PAGEID 104). These requests contemplate information beyond what a buyer, as described in Mr. Manning's testimony, would have.